IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CT-03353-M-RJ

| | |
|---|---|
| THEODORE MACON CARRINGTON, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| WARDEN THOMAS SCARANTINO, et al., ) | |
| ) | |
| Defendants. ) | |

On September 19, 2022, Theodore Macon Carrington, Jr. ("Carrington"), then a pretrial detainee at the Butner Federal Medical Center ("F.M.C. Butner") proceeding *pro se* and without prepayment of fees, filed a complaint under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens"). See [D.E. 1, 2, 7].

The court now conducts its initial review of the complaint under 28 U.S.C. § 1915 and, for the reasons discussed below, dismisses the complaint.

Legal Standard:

When reviewing applications for leave to proceed *in forma pauperis*, the court "shall dismiss" any case that is "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of the pleading is flexible, and a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not undermine the "requirement that a pleading contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see Ashcroft v. Iqbal, 556 U.S. 662, 677–84 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

In Bivens, the Supreme Court "'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" Iqbal, 556 U.S. at 675 (citation omitted); see Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001) ("The purpose of Bivens is to deter individual federal officers from committing constitutional violations."). To state a cognizable Bivens claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978).

### Plaintiffs' Filings:

Plaintiffs name as defendants F.M.C. Butner, Warden Thomas Scarantino ("Scarantino"), and the United States Department of Justice ("D.O.J."). Compl. [D.E. 1] at 3–4. Plaintiff generally alleges violations of his civil rights at F.M.C. Butner between January 19, 2022, and August 22, 2022. Id. at 5. Plaintiff specifically alleges: he was ordered to undergo a psychiatric evaluation for a time not to exceed 120 days under 18 U.S.C. § 4241(d); 270 days later, Scarantino

2

issued a "Certificate of Mental Disease and Dangerousness"; a judge in the U.S. District Court for the Middle District of North Carolina has yet to determine if he is incompetent and unrestorable to stand trial; "Scarantino has thereby prejudiced any judge or jury, convicting me before I eve set foot in a courtroom [sic]"; the "Certificate of Mental Disease and Dangerousness" is against the findings of Dr. Charles Cloutier who, on March 8, 2022, described plaintiff as having "no suicidal, violent, or homicidal ideation"; the "Certificate of Mental Disease and Dangerousness" states that "suitable arrangements for state custody and care for [plaintiff] are not available," but Scarantino "never even inquired if a State Facility was available" and could not have done so because plaintiff's "competency/restoration hearing was months away"; he has asked for, but not been given, a "Suitable Placement Form" needed to secure a bed at a state facility, despite multiple requests for such a form; F.M.C. Butner officials "refused to give [plaintiff] a copy of [his] Psychology Medical Records and Evaluation, which [plaintiff] needs to defend [himself] in court [sic]"; the "Certificate of Mental Disease and Dangerousness" requests a hearing in this court but plaintiff is not represented by an attorney in this district; a case was opened in this court but was held in abeyance, "putting the case in limbo indefinitely," thus violating plaintiff's right to an attorney; the mail room at F.M.C. Butner "destroys legal mail being sent out by inmates"; plaintiff "mailed out this same lawsuit with 12 attachments on 8/7/22" but "it never made it to the Court"; the "Government's Competency/Commitment proceedings are rife with abuse and corruption"; "Big $ money is being made off this Psychology / Mental Health Prison Racket [sic]" and "if the Government has no case, or a defendant is a hated whistle blower, or poor, the process makes it simple to bury someone forever [sic]"; Scarantino and F.M.C. Butner are "just such a Mental

3

Health Racketeering Operation [sic]" because "[t]hey violate civil rights and commit crimes against U.S. Citizens at will with no repercussions [sic]." Id. at 5–7.

For relief, plaintiff is "demanding $85 million dollars in damages [sic]" and "that the Department of Justice investigate the Culture of Corruption, and Systemic Practice of Civil Rights Violations [sic]" at F.M.C. Butner. Id. at 8.

Plaintiff attaches to his complaint: a "Certificate of Mental Disease and Dangerousness" as to plaintiff, and signed by Scarantino, requesting a hearing pursuant to § 4246(a), Compl. Attach. [D.E. 1-1] at 1; motion in United States v. Carrington, No. 5:22-HC-2093 (E.D.N.C.), dated May 25, 2022, seeking to hold his Commitment Action in abeyance, id. at 2–3 (noting the U.S. District Court for the Middle District of North Carolina had not yet determined plaintiff's competency and restorability to stand trial (citing United States v. Carrington, No. 1:21-CR-0005 (M.D.N.C.))); what appears to be an unsigned proposed order asking the court to grant the Government's motion to hold plaintiff's Commitment Action in abeyance pending resolution of plaintiff's competency and restorability in the U.S. District Court for the Middle District of North Carolina, with a handwritten note stating, "this open ended abeyance imprisons the alleged perpetrator indefinitely, without a hearing," id. at 4; and plaintiff's various TRULINCS requests to F.M.C. Butner staff seeking medical records, requesting a "Suitable Placement Form," and asserting that his mailings have not been delivered by the mail room, see id. at 5–13.

### Discussion:

Plaintiff's claims fail for several reasons. First, neither the D.O.J. nor F.M.C. Butner are amenable to suit under Bivens. See Iqbal, 556 U.S. at 676; Malesko, 534 U.S. at 71–72; FDIC v. Meyer, 510 U.S. 471, 483–86 (1994) (holding a Bivens action is unavailable against

4

Government agencies); Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002) (noting a Bivens action "does not lie against either agencies or officials in their official capacity"), aff'd, 540 U.S. 614 (2004); Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996) (finding "[a]ny remedy under *Bivens* is against federal officials individually, not the federal government."); see also Preval v. Reno, 203 F.3d 821, 2000 WL 20591, at *1 (4th Cir. 2000) (per curiam) (unpublished) (finding a "[j]ail is not a 'person' and is therefore not amenable to suit under § 1983").

Next, plaintiff lacks a constitutional right to a D.O.J. investigation. See Kunzer v. Magill, 667 F. Supp. 2d 1058, 1061 (D. Minn. 2009) ("Private citizens have no constitutional or other right to a criminal investigation, nor any judicially-cognizable interest in the prosecution or non-prosecution of another." (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973))).

As to plaintiff's claims that his legal mailings were improperly handled by the mail room, and he was not timely provided either his requested medical records or a "Suitable Placement Form," plaintiff fails to plausibly allege that Scarantino was personally involved in these purported incidents, see Ziglar v. Abbasi, 137 S. Ct. 1843, 1860 (2017) ("Abbasi") ("[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others."), and his bald, threadbare access-to-courts allegation fails to identify with specificity an actual injury or "demonstrate that a nonfrivolous legal claim had been frustrated or impeded." Lewis v. Casey, 518 U.S. 343, 351–52 (1996); see Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006).

Next, although plaintiff disputes Scarantino's issuance of a "Certificate of Mental Disease and Dangerousness," and alleges Scarantino made inadequate efforts when finding that "suitable arrangements for State custody and care" are not available, such claims amount to challenges to the length and fact of his civil detention and do not sound under Bivens. See Skinner v. Switzer,

5

562 U.S. 521, 525 (2011); Wilkinson v. Dotson, 544 U.S. 74, 81 (2005); Preiser v. Rodriguez, 411 U.S. 475, 498–500 (1973); United States v. Tootle, 65 F.3d 381, 383 (4th Cir. 1995); see also United States v. Perkins, 67 F.4th 583, 590 (4th Cir. 2023); United States v. Curbow, 16 F.4th 92, 95 (4th Cir. 2021); United States v. Wayda, 966 F.3d 294, 296 (4th Cir. 2020).

Plaintiff has been found not competent and not restorable for criminal trial in the U.S. District Court for the Middle District of North Carolina. Carrington, No. 5:22-HC-02093-M (E.D.N.C. Apr. 4, 2023), Tr. [D.E. 26]. On March 23, 2023, plaintiff was committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4246. Id., Order [D.E. 23]. Plaintiff has appealed and moved to vacate this order of commitment. See id., [D.E. 28, 33]. Thus, plaintiff's Commitment Action is the proper venue for consideration of these claims. See Timms v. Johns, 627 F.3d 525, 531–33 (4th Cir. 2010) (noting that, because civil commitment statutes provided a procedure for the remedy sought, a detainee should first exhaust his relief in the Commitment Action before seeking habeas relief under 28 U.S.C. § 2241).

Alternatively, even if plaintiff's instant claims were cognizable under Bivens, the court still would decline to recognize an implied Bivens cause of action in this case.

In Abbasi, the Supreme Court noted that it had recognized Bivens causes of action in only three instances–an unreasonable seizure claim against federal officers under the Fourth Amendment in Bivens, a federal employment gender discrimination claim against a United States Congressman under the equal protection component of the Fifth Amendment's Due Process Clause in Davis v. Passman, 442 U.S. 228 (1979) ("Davis"), and a deliberate indifference claim on behalf of a decedent inmate against federal prison officials under the Eighth Amendment's Cruel and

6

Unusual Punishments Clause in Carlson v. Green, 446 U.S. 14 (1980) ("Carlson"). See Abbasi, 582 U.S. at 130–31.

The Court also noted, "when deciding whether to recognize an implied cause of action, the 'determinative' question is one of statutory intent." Id. at 133 (citations omitted). To recognize implied causes of action under Bivens, a court must discern whether it has authority "to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." Id. The Court opined that expanding the Bivens remedy is now a "disfavored judicial activity," id. at 135 (quotation omitted), and "separation-of-powers principles are or should be central to the analysis" when a party seeks an implied cause of action, id.

If a claim "presents a new Bivens context," id. at 139, a court must assess whether any "special factors counsel[ ] hesitation" in recognizing a remedy "in the absence of affirmative action by Congress." Id. at 136; see Hernandez v. Mesa, 140 S. Ct. 735, 743 (2020) (reaffirming the Abbasi two-step analysis); but see Egbert v. Boule, 142 S. Ct. 1793, 1803 (2022) (acknowledging, although Abbasi "describe[s] two steps," the steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy," and suggesting a "rational reason" to defer to Congress will be present "in most every case.").

A Bivens claim is "new" if the case differs "in a meaningful way from previous Bivens cases decided by" the Court. Abbasi, 582 U.S. at 139. Such meaningful differences include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the function of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Id. at 140.

Plaintiff's claims present a new context that is meaningfully different from the causes of action the Supreme Court previously recognized in Bivens, Davis, or Carlson. Plaintiff's alleged injuries–undelivered mail, dilatory provision of medical records, the purportedly erroneous issuance of "Certificate of Mental Disease and Dangerousness," failure to provide him a "Suitable Placement Form," and inadequate review of whether "suitable arrangements for State custody and care" were available–are vastly different from those in Carlson, 446 U.S. at 17 (finding a Bivens remedy available where federal prison officials failed to adequately treat a decedent's fatal asthma attack). Plaintiff also names a new type of defendant–the Warden of F.M.C. Butner–as opposed to prison officials failing to provide adequate medical treatment in Carlson, a Congressman making employment determinations in Davis, or arresting federal narcotics agents in Bivens. Unlike in Davis, these claims do not sound under the equal protection aspect of the Fifth Amendment's Due Process Clause. See Abbasi, 582 U.S. at 140 (listing "the rank of the officers involved" and "the constitutional right at issue" as potential meaningful differences); Hernandez, 140 S. Ct. at 743 (noting a Bivens claim "may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized"); see also Annappareddy v. Pascale, 996 F.3d 120, 132–34 (4th Cir. 2021) (citing Abbasi and agreeing that "*Bivens* has never 'been extended to a Fifth Amendment due process claim'").

After finding this case is "meaningfully different" from Bivens causes of action previously recognized by the Supreme Court, the court also finds that there are "special factors" counseling hesitation before expanding the Bivens remedy because plaintiff's issues as to his commitment to the custody of the Attorney General may be addressed in his Commitment Action, and because his issues as to legal mailings, obtaining medical records, and obtaining a "Suitable Placement Form"

8

instead may be addressed through the Federal Bureau of Prisons administrative remedy procedure or via motions filed in his relevant court cases. See Abbasi, 582 U.S. at 136; Earle v. Shreves, 990 F.3d 774, 780 (4th Cir.) (noting that, although "alternate remedies do not permit an award of money damages, they nonetheless offer the possibility of meaningful relief and remain relevant" to the "special factor" analysis), cert. denied, 142 S. Ct. 358 (2021).

Answering the Supreme Court's ultimate Bivens remedy expansion query – "whether there is any reason to think that Congress might be better equipped to create a damages remedy," Egbert, 142 S. Ct. at 1803 – there indeed is a "rational reason" for the court instead to defer to Congress for creation of a damages remedy in this case. See, e.g., Tate v. Harmon, 54 F.4th 839, 847–48 (4th Cir. 2022) (applying Egbert). Thus, the court declines to extend the Bivens remedy in this case. See Abbasi, 582 U.S. at 140, 147 (noting, extension of the Bivens remedy "is a decision for the Congress to make, not the courts" and "even a modest [Bivens] extension is still an extension").

Finally, because the complaint cannot be cured by amendment, dismissal is appropriate. See Goode v. Cent. Virginia Legal Aid Soc'y, Inc., 807 F.3d 619, 628 (4th Cir. 2015).

## Conclusion:

In sum, the court DISMISSES the complaint for failure to state a claim upon which relief may be granted, see 28 U.S.C. § 1915(e)(2)(B)(ii), and DIRECTS the clerk to close the case.

SO ORDERED this 28th day of September, 2023.

RICHARD E. MYERS II
Chief United States District Judge

9